*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* J. HOSEIT, Minor.

UNPUBLISHED
October 1, 2019

Nos. 347103; 349844
Otsego Circuit Court
Family Division
LC No. 17-000081-NA

AFTER REMAND

Before: METER, P.J., and JANSEN and M. J. KELLY, JJ.

PER CURIAM.

These consolidated appeals arise from the trial court's decision to terminate respondent's parental rights to JH. For the reasons stated in this opinion, we affirm.

## I. BASIC FACTS

On December 4, 2018, the trial court terminated respondent's parental rights to JH under MCL 712A.19b(3)(g). At the time of termination, that statute provided that before terminating a parent's parental rights under subdivision (g), the court had to find by clear and convincing evidence that "[t]he parent, *although, in the court's discretion, financially able to do so,* fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age." See 2018 PA 58 (emphasis added). The trial court, however, erroneously relied on a prior version of the statute when it found termination of respondent's parental rights was warranted under subdivision (g). The version applied by the trial court permitted the court to terminate a parent's parental rights if it found by clear and convincing evidence that "[t]he parent, *without regard to intent,* fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age." See 2017 PA 193 (emphasis added). The deletion of the language providing that a parent's intent was irrelevant and the addition of language requiring the court to find that the parent has the financial ability to provide proper care and custody is a substantive change in the law that rendered the court's initial findings under subdivision (g) inadequate. Accordingly, we vacated the court's opinion and remanded to the trial court to

-1-

determine whether respondent had the financial ability to provide proper care or custody to her child. *In re J Hoseit minor*, unpublished per curiam opinion of the Court of Appeals, issued June 11, 2019 (Docket No. 347103), p 2. We did not require the court to restate its findings as they related to the remaining requirements of subdivision (g), nor did we require the court to restate its findings as they related to the child's best interests. *Id*.

On remand, the trial court found that respondent had the financial ability to provide proper care and custody for JH. And, based on its findings under the correct version of MCL 712A.19b(3)(g), the court entered a new order terminating respondent's parental rights.

## II. ADJUDICATION

Initially, in Docket No. 349844, respondent argues that her entry of a plea of admission at the adjudication hearing was invalid because the trial court did not advise her that she was waiving her right to a trial and did not advise her of the consequences of her plea.[1] However, the purpose of the remand was for the court to make factual findings under the correct version of MCL 712A.19b(3)(g), not to evaluate potential errors with the adjudication. Following an appeal as of right, if a case is remanded by an appellate court "for some limited purpose," "a second appeal as of right, limited to the scope of the remand, lies from the decision on remand." *People v Kincade (On Remand)*, 206 Mich App 477, 481; 522 NW2d 880 (1994); see also *People v Jones*, 394 Mich 434, 435-436; 231 NW2d 649 (1975) ("[W]e hold that the scope of the second appeal is limited by the scope of the remand."). Accordingly, respondent's second appeal in Docket No. 349844 is limited to the scope of the remand and we will not consider respondent's challenge to the adjudication proceedings.

## III. TERMINATION OF PARENTAL RIGHTS UNDER MCL 712A.19b(3)(G)

### A. STANDARD OF REVIEW

Respondent next argues that the trial court clearly erred by terminating her parental rights under MCL 712A.19b(3)(g). "In order to terminate parental rights, the trial court must find by clear and convincing evidence that at least one of the statutory grounds for termination in MCL 712A.19b(3) has been met." *In re VanDalen*, 293 Mich App 120, 139; 809 NW2d 412 (2011). The trial court's finding that a ground for termination has been established is reviewed for clear error. *In re Gonzales/Martinez*, 310 Mich App 426, 430; 871 NW2d 868 (2015); MCR 3.977(K). "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *In re BZ*, 264 Mich App 286, 296-297; 690 NW2d 505 (2004).

---

[1] MCR 3.971 requires that before accepting a plea of admission or a plea of no contest, the trial court must advise the respondent of several things, including that the respondent is waiving his or her right to a trial and of the consequences of his or her plea, including that it can be later "used as evidence in a proceeding to terminate parental rights . . . ."

B. ANALYSIS

In order to terminate respondent's parental rights under MCL 712A.19b(3)(g), as amended by the Legislature by 2019 PA 58, the trial court had to find by clear and convincing evidence (1) that in the court's discretion respondent was financially capable of providing proper care or custody for her child, (2) that respondent failed to provide proper care or custody, and (3) that there was no reasonable expectation that she would be able to provide proper care and custody within a reasonable time considering her child's age.

The court found that there was clear and convincing evidence that respondent was financially able to provide proper care or custody to her child. In doing so, the court relied on evidence that respondent had a monthly income and owned a house. The court also noted that respondent received assistance from a caretaker, but it did not find that fact dispositive. Critically, the court found that respondent's difficulties in the case were not tied to her financial ability to care for her child. The court's findings were supported by the record. At the termination hearing respondent testified that she received disability benefits of approximately $755 per month, that she received food stamps, and that she owned a two-story, two bedroom home. Respondent further testified that she was in a good financial position and that all of her needs were being met. On appeal, respondent attempts to avoid the effect of her testimony by claiming that she merely answered generic questions, so her statement that she was in a good financial position is insufficient to establish that she had the financial ability to provide proper care and custody for JH. The court, however, was free to credit respondent's testimony regarding her financial position, and, in any event, the court relied on more than respondent's bare statement that her finances were not a problem. Accordingly, we conclude that the court did not clearly err by finding that respondent had the financial ability to provide proper care and custody.

The court also found that respondent had failed to provide proper care or custody for JH. Here, before the child protective pleadings were initiated, respondent left JH with relatives for an extended period of time without ensuring that the relatives had a power of attorney or other legal authority to care for him. At the termination hearing, she acknowledged that the reason for doing so was because her physical health prevented her from caring for him. In addition, to respondent's physical health preventing her from caring for JH, the record reflects that respondent had a problem with substance abuse, domestic violence, and parenting skills. In order to address respondent's barriers to reunification, the case services plan required her to participate in and benefit from the services, including a psychological evaluation, follow any recommendations based upon the evaluation, continue counseling with her substance-abuse clinic, participate in twice monthly drug screens in addition to the drug screens given at the clinic, participate in parenting skills class, and participate in supervised parenting-time visits on a regular and consistent basis. Although respondent made some progress—including completing a parenting class and attending a number of parenting time visits—the record reflects that she did not fully comply with all aspects of the plan, nor did she demonstrate a significant benefit from the parts of the plan that she completed. "A parent's failure to comply with a parent/agency agreement pursuant to a court order is evidence that the parent will not be able to provide a child proper care and custody." *In re White*, 303 Mich App 701, 710; 846 NW2d 61 (2014).

Specifically, the trial court found that respondent had ongoing and unresolved substance abuse issues. Respondent was discharged from her Suboxone treatment clinic due to her lack of participation in counseling. Additionally, she missed 12 of the 31 court-ordered random drug screens. Seven drug screens were negative for all substances, including prescribed medications. Twelve of her drug screens were positive, including six positive tests for amphetamines and one positive test for cocaine. Additionally, although respondent's last 28-day supply prescription for Suboxone was filled on April 30, 2018, respondent continued to test positive for Suboxone in June, July, August, September, and October.

In addition, respondent was a "no-show" twice for her psychological evaluation and did not complete the evaluation until May 2018. And although she was initially recommended to have weekly counseling, she only started counseling in July 2018 and attended only monthly. Overall, her participation in counseling was limited, and she consistently failed to regularly keep her various appointments. At the termination hearing, her therapist opined that respondent would "probably" need approximately one year of consistent attendance and enrollment in a domestic violence program to address her issues. Yet, respondent failed to follow up on the recommendations to participate in a domestic violence program despite evidence that domestic violence inflicted on her and JH by JH's father had traumatize him. In particular, the record reflects that respondent had opened an "independent living services case" in March 2018 that allowed her (current or former) boyfriend to be paid for services provided to respondent, including "dressing, mobility, toileting and transferring, housework, laundry, meal prep, shopping for food, and travel for shopping." A Department of Health and Human Services (DHHS) caseworker testified that despite respondent's denial that her boyfriend lived in her home, respondent had listed him as a resident of the home on her application for independent living services. The boyfriend's presence in the home was an area of concern because JH reported seeing the boyfriend choke respondent on one occasion. Thus, it was reasonable to infer that although respondent had separated from her husband and was planning to divorce him, domestic violence remained a concern that had not been addressed.

There was also testimony that respondent completed a parenting skills class, but that aspects of her parenting were still concerning, including that respondent would make JH promises and then not follow through and that respondent had difficulty disciplining JH during parenting time when he would act out. The DHHS caseworker explained that some of JH's behavioral issues—such as his tendency to lie with respect to basic things—was reflective of respondent's behavior. In addition, after parenting time visits, JH would become very destructive, which further reflected that contact with respondent had a negative effect on him. Given these circumstances, the trial court did not err by finding that respondent failed to provide proper care or custody and that there was no reasonable expectation that respondent would be able to provide proper care or custody within a reasonable time given JH's age. MCL 712A.19b(3)(g).

## IV. BEST INTERESTS

### A. STANDARD OF REVIEW

Respondent next argues that termination of her parental rights was not in JH's best interests. This Court reviews the trial court's determination of best interests for clear error. *In re*

*Olive/Metts*, 297 Mich App 35, 40; 823 NW2d 144 (2012). When considering best interests, the focus is on the child, not the parent. *In re Moss*, 301 Mich App 76, 87; 836 NW2d 182 (2013). "[W]hether termination of parental rights is in the best interests of the child must be proved by a preponderance of the evidence." *Id*. at 90.

## B. ANALYSIS

Respondent contends that the trial court erred by concluding that termination of her parental rights was in JH's best interests because there was a loving bond between respondent and JH. The trial court acknowledged that respondent loved JH and that JH shared "strong feelings" for her. But the strength of the bond between a parent and a child is only one factor that the court may consider when determining whether termination of a parent's right is in the best interests of the child. See *In re Olive/Metts*, 297 Mich App at 41-42 (listing factors a court may consider when evaluating whether termination of a parent's parental rights is in a child's best interests). The court may consider many other factors, including the child's need for stability and permanency, the advantages of the foster care home over the respondent's home, and the respondent's parenting skills, see *id*, the parent's substance abuse problems, see *In re AH*, 245 Mich App 77, 89; 627 NW2d 33 (2001), the child's wellbeing in care, the respondent's domestic-violence history, the respondent's compliance with the case service plan, and the respondent's visitation history, see *In re White*, 303 Mich App at 714. Ultimately, "[t]he trial court should weigh all the evidence available to determine the child's best interests." *Id*. at 713.

Here, the court found that despite the bond between respondent and JH, termination was in JH's best interests because of respondent's failure to comply with and benefit from services. As explained above, respondent failed to comply with and benefit from the case services plan, and her issues with substance abuse remained outstanding. The issues were significant enough that JH knew respondent had a substance-abuse issue and was afraid for her wellbeing as a result. In addition, the court also found that termination was in JH's best interests because of his significant need for long-term intervention to address his own needs. During the case, JH exhibited self-harming behaviors and expressed a desire to harm others. As a result of his behaviors he was admitted to an inpatient program at a children's psychiatric hospital. There was also testimony that JH often expressed fear and confusion regarding his permanency. In light of JH's need for stability and permanency, we conclude that the trial court's finding that termination of respondent's parental rights was in JH's best interests was supported by clear and convincing evidence notwithstanding the existence of a bond between respondent and JH.

Affirmed.

/s/ Patrick M. Meter
/s/ Kathleen Jansen
/s/ Michael J. Kelly